T.C. Memo. 1997-118


UNITED STATES TAX COURT


ROBERT J. AND ANNE L. WILSON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]


Docket Nos. 18481-93, 17723-94.          Filed March 6, 1997.


<u>Rex L. Sturm</u>, for petitioners.

<u>Michal Cline</u>, for respondent.


SUPPLEMENTAL MEMORANDUM FINDINGS OF FACT AND OPINION

PARR, <u>Judge</u>:  These proceedings arise out of a dispute

between the parties over their differing computations under Rule

* This opinion is supplementing <u>Wilson v. Commissioner</u>, T.C.
Memo. 1996-418.

155.[1]  On September 17, 1996, we filed our findings of fact and opinion in these cases, T.C. Memo. 1996-418 (Wilson I), and directed that decisions be entered under Rule 155.

Petitioners have objected to respondent's computation under Rule 155.  For the taxable year 1990, we find petitioners' argument to be correct and therefore sustain their objection. However, for the taxable year 1989, we find that both respondent's and petitioners' computations are incorrect. Accordingly, based on the conclusions reached in Wilson I, we make the necessary adjustments to respondent's Rule 155 computation for 1989 as set out below.

In Wilson I, we made findings of fact which we adopt for purposes of this supplemental opinion.  However, for clarity, we begin with a brief summary of some of the facts found therein and also report additional findings of fact pertinent to this supplemental opinion.

FINDINGS OF FACT

In 1989, petitioners received $62,937 from the State of Maryland (the State), representing the balance of a $104,000 settlement award paid as compensation for rental property that the State acquired through a "quick take" condemnation

---

[1]     All Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect for the years in issue, unless otherwise indicated.  All dollar amounts are rounded to the nearest dollar, unless otherwise indicated.

proceeding. The property was needed to widen and improve Route 355 in Gaithersburg, Maryland. In Wilson I, we held that of the $62,937 condemnation award received by petitioners, $34,618 is allocable to prejudgment interest. Furthermore, petitioners conceded that $1,333 of the $62,937 is taxable as postjudgment interest income.

In 1989, petitioners paid $26,341 for attorney's fees incurred in connection with the condemnation proceedings. Petitioners did not claim the expenses on their 1989 return, since they believed the fees were not deductible because they were attributable to a condemnation award eligible for nonrecognition of gain pursuant to section 1033.

Respondent determined in the notice of deficiency for 1989 that petitioners had unreported dividend income of $1,677. However, on brief, respondent conceded that for 1989 petitioners had unreported dividend income of only $573. In Wilson I, we found that for 1989, petitioners received a $2,105 dividend distribution from the T. Rowe Price stock fund (stock fund), which they failed to report on their 1989 income tax return.

In 1989, petitioners received $27,206 on the sale of the stock fund. Petitioners did not report the sale on their 1989 tax return. Respondent determined in the notice of deficiency for 1989 that petitioners had a $29,904 unreported capital gain. However, the notice of deficiency failed to give petitioners credit for their basis in the stock fund. On brief, respondent

conceded that petitioners had a $29,214 basis in the stock and therefore are entitled to a $2,009[2] loss in 1989 on the sale of the stock fund.

## OPINION

### I. Allocation of Condemnation Award Between Gain From the Sale of Property and Interest Income

In their Rule 155 computations for 1989, neither respondent nor petitioner made a correct allocation of the condemnation award between gain from the sale of property and ordinary interest income.  To comply with our holding in Wilson I, for 1989 petitioners' $62,937 condemnation award must be decreased, not only by the $1,333 attributable to postjudgment interest, but also by the $34,618, representing prejudgment interest. Simultaneously, petitioners' interest income must be increased by that amount.  Accordingly, we find that in 1989, petitioners received a condemnation award of $26,986, which is characterized as capital gain, and interest income of $35,951, representing $34,618 in prejudgment interest and $1,333 in postjudgment interest, which is characterized as ordinary income.

### II. Itemized Deduction for Attorney Fees

Respondent's Rule 155 computation fails to take into account the fact that petitioners incurred $26,341 in attorney's fees for 1989 in connection with the condemnation proceedings on their

---

[2]    On brief, respondent concedes a $2,008.81 actual loss on the sale of the stock, which we rounded up to $2,009.

rental property in Gaithersburg, Maryland.  At trial and on brief, petitioners argued that they should be allowed to deduct those expenses if the Court should find, as we indeed did in Wilson I, that the condemnation proceeds do not qualify for tax-free treatment under section 1033.[3]  We agree with petitioners.

Ordinary and necessary attorney fees are generally deductible subject to certain restrictions under section 67(a), provided such expenses are paid or incurred during the taxable year with respect to an issue involving income-producing property.  Sec. 212(1); sec. 1.212-1(l), Income Tax Regs.  In addition, a deduction is allowed for attorney's fees paid or incurred during the taxable year in connection with the determination, collection, or refund of any tax with respect to

---

[3]    Although this issue was not raised by petitioners in their petition herein, it was argued by them at trial and on brief, and the evidence is uncontested that they indeed incurred attorney fees of $26,341 in 1989. Leahy v. Commissioner, 87 T.C. 56, 65 (1986); Estate of Horvath v. Commissioner, 59 T.C. 551, 555 (1973); Wynn v. Commissioner, T.C. Memo. 1996-415.  Moreover, at trial, respondent did not object to petitioners' assertion that the attorneys' fees are at issue if "the Court should find that [petitioners] didn't reinvest" the condemnation award pursuant to sec. 1033.

Normally we will not consider an issue that was not pleaded, but raised for the first time on brief.  Rule 34(b)(4).  However, respondent did not object to petitioners' arguments, and we find that based on the entire record, respondent was not surprised or prejudiced by petitioners' position.  Accordingly, we deem the issue raised and tried by consent of the parties under Rule 41(b).  Mills v. Commissioner, 399 F.2d 744, 748 (4th Cir. 1968) affg. T.C. Memo. 1967-67; Leahy v. Commissioner, supra; Estate of Horvath v. Commissioner, supra; Christensen v. Commissioner, T.C. Memo. 1996-254.

income-producing property. Sec. 212(3); <u>Page v. Commissioner</u>, T.C. Memo. 1993-398, affd. 58 F.3d 1342 (8th Cir. 1995).

In 1989, petitioners received a condemnation award and paid attorney fees of $26,341 in connection with the condemnation proceedings. Petitioners treated the condemnation award as tax free under section 1033. Accordingly, petitioners did not deduct the attorney's fees because they thought they were precluded from doing so, as the fees were allocable to what they believed to be tax-free income. Sec. 1.212-1(e), Income Tax Regs.

In Wilson I, we held that the condemnation award received by petitioners in 1989 did not qualify for nonrecognition treatment under section 1033. Therefore, the condemnation award was includable in petitioners' income for 1989. As petitioners are required to include the condemnation award in their taxable income for 1989, they are also entitled to claim a deduction for the legal expenses incurred in litigating the condemnation dispute. Accordingly, we find that in 1989 petitioners paid and therefore may claim a miscellaneous itemized deduction for attorney's fees of $26,341. Sec. 67(a) and (b).

### III. Unreported Dividend Income

In the notice of deficiency for 1989, respondent determined that petitioners had unreported dividend income of $1,677. On brief, respondent conceded that petitioners had only $573 in unreported dividend income. To reflect this concession, respondent's Rule 155 computation should have subtracted $1,104

from the $1,677 amount. Instead, respondent subtracted only $1,084 from the $1,677 amount.

Moreover, respondent's computation is flawed with respect to an additional item of dividend income. In Wilson I, we found that petitioners received a $2,105 dividend distribution from a stock fund, which they failed to report on their 1989 income tax return. Accordingly, respondent's Rule 155 computation should have made an adjustment to increase petitioners' dividend income by this amount. Thus, petitioners' unreported dividend income for 1989 is $1,001 ($2,105 minus $1,104). However, rather than increasing petitioners' dividend income by $2,105, respondent's Rule 155 computation decreases petitioners' determined capital gain income of $29,904 by $27,800, thus leaving petitioners with a capital gain of $2,104.[4] Given this scenario, we find that respondent's Rule 155 computation erroneously characterizes the $2,105 distribution as capital gain, rather than as ordinary dividend income.

IV. Capital Loss

In 1989, petitioners sold their stock fund for $27,206. Petitioners failed to report this transaction on their 1989 return. In the notice of deficiency for 1989, respondent

---

[4]     We note that the $1 difference between the $2,105 dividend distribution petitioner's failed to report and the $2,104 capital gain reflected in respondent's Rule 155 computation results from the fact that we rounded the $2,105 amount up from $2,104.66. See supra note 1.

determined that petitioners had a $29,904[1] unreported capital gain. However, respondent failed to give petitioners basis credit in determining their capital gain on the sale of the stock. On brief, respondent conceded that petitioners had a basis in the stock fund of $29,214 and therefore are entitled to a $2,009 loss on the sale of the stock. Accordingly, respondent should have subtracted $31,913 from her $29,904 of determined unreported capital gain income. This adjustment will account for petitioners' $2,009 capital loss. However, as discussed above, respondent's Rule 155 computation erroneously decreases petitioners' capital gain by only $27,800.

Accordingly, we sustain petitioners' Rule 155 computation for 1990. However, with respect to the Rule 155 computation for 1989, the parties shall make the necessary adjustments as discussed herein.

To reflect the foregoing,

<u>An order will be issued for 1989 and 1990 directing the parties to resubmit their Rule 155 computations in accordance with the findings herein</u>.

---

[1]     We note that the record is unclear as to the source of the additional $2,698 ($29,904 minus $27,206) of capital gain income.